UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

IN RE:                                )
                                      )
LARRY B. THACKER,                     )   CASE NO. 12-50370-KKS
                                      )   CHAPTER 7
       Debtor.                        )
                                      )
_____ )

### MOTION FOR AUTHORITY TO SELL
### PROPERTY FREE AND CLEAR OF LIENS AND OTHER INTERESTS

Pursuant to Rule 6004(c) of the Rules of Bankruptcy Procedure and 11 U.S.C. §363, JOHN E. VENN, JR., Trustee, by his undersigned attorney, hereby files his Motion for Authority to Sell Property Free and Clear of Liens and Other Interests, and as grounds therefore will show:

1. Movant is the duly appointed Trustee in the above-referenced proceeding.

2. The property of the estate includes the real property in Bay County, Florida, more particularly described in Exhibit "A" attached hereto (hereinafter "Real Property").

3. Movant proposes to sell the above-described real property to Fichter Management Company, LLC, for the sum of $220,000.00 payable in cash in full at closing, free and clear of liens, with same, if valid, to attach to the proceeds. From the proceeds of the sale, Movant will pay the costs normally associated with closings of real property including realtors commissions, recording fees, and real property taxes. It is estimated that the sale will net approximately $201,000.00 after payment of the closing costs. As a result of a settlement with SE Property Holdings, LLC, the Movant will pay SE Property Holdings, LLC one-half of the net proceeds (Doc. 463). A copy of the Contract and Closing Cost Estimate are attached hereto.

4. To the best of Movant's information and belief, Thacker 200, LLC and/r The Thacker Family Revocable Living Trust claimed an interest in the Real Property. The Trustee filed an

adversary proceeding to determine the extent of the interest, if any, and on the Trustee's Motion for Summary Judgment, the Bankruptcy Judge ruled that the Real Property was property of the Bankruptcy Estate.

5. The Lamar Companies has or may claim to have a lease on the property for advertising. RDM3, LLC has agreed to take title to the property subject to any existing lease with The Lamar Companies.

WHEREFORE, Movant prays for authority to sell the property as set forth herein free and clear of the liens and interests as set forth herein, for authority to execute all documents necessary to consummate the sale and for such other and further relief as is just and proper.

/s/ John E. Venn, Jr.
JOHN E. VENN, JR., P.A.
FL Bar No. 184992
220 W. Garden St., #603
Pensacola, FL 32502
(850) 438-0005
Johnevennjrpa@aol.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing Motion for Authority to Sell Property Free of Liens was furnished to SE PROPERTY HOLDINGS, LLC, c/o Matthew Miller, Registered Agent, 50 North Third St., Newark, OH 43055, THACKER 200, LLC, c/o Carlotta A. Thacker, Registered Agent, P. O. Box 28451, Panama City, FL 32411, THACKER FAMILY REVOCABLE LIVING TRUST, Attn: Larry B. Thacker and Carlotta A. Thacker, Trustees, 4926 Spyglass Dr., Panama City Beach, FL 32408, via regular U.S.Mail, and to ROLAND KIEHN at rkiehn@barronredding.com, LOUIS LEVENSON at louis@levensonlaw.com, STEVEN SELLERS at steve@dshattorneys.com, HOWARD

SLOMKA at howie@slomkalawfirm.com and CHARLES EDWARDS, Office of U.S. Trustee, at charles.edwards@usdoj.gov, via Notice of Electronic Filing (NEF), this 13th day of February, 2015.

/s/ John E. Venn, Jr.
JOHN E. VENN, JR.

**CRYE★LEIKE**
*COASTAL REALTY*

## Vacant Land Contract

1. **Sale and Purchase:** _____ JOHN VENN, TRUSTEE _____ ("Seller")
   and _____ FICHTER MANAGMENT CO., LLC. _____ ("Buyer")
   (the "parties") agree to sell and buy on the terms and conditions specified below the property ("Property")
   described as:
   Address: _____ 0000 N OHIO AVE , LYNN HAVEN, FL 32444 _____
   Legal Description: 16 3S 14W -37-103B2 ALL THAT PART OF S1/2 OF N1/2 OF NE1/4 OF NW1/4 LYING W OF HWY & E OF RR R/W LESS TO RD R/W ORB 3215 P 1550

   SEC ___ /TWP ___ /RNG ___ of  Bay  County, Florida. Real Property ID No.: 11628-000-000
   Including all improvements existing on the Property and the following additional property: _____

2. **Purchase Price:** (U.S. currency) .................................................................. $ 220,000.00
   All deposits will be made payable to "Escrow Agent" named below and held in escrow by:
   Escrow Agent's Name: _____ MCNEEESE TITLE CO, LLC _____
   Escrow Agent's Contact Person: _____ CINDY KELLY _____
   Escrow Agent's Address: _____ 36468 EMERALD COAST PARKWAY _____
   Escrow Agent's Phone: _____ 850-337-4242 _____
   Escrow Agent's Email: _____ Ckelly@mcneesetitle.com _____

   (a) Initial deposit ($0 if left blank) **(Check if applicable)**
       ☐ accompanies offer
       ☒ will be delivered to Escrow Agent within _____ days (3 days if left blank)
       after Effective Date ............................................................. $ 2,000.00
   (b) Additional deposit will be delivered to Escrow Agent **(Check if applicable)**
       ☐ within _____ days (10 days if left blank) after Effective Date
       ☐ within _____ days (3 days if left blank) after expiration of Feasibility Study Period ....... $ _____
   (c) Total Financing (see Paragraph 5) (express as a dollar amount or percentage) ................ $ _____
   (d) Other: _____ $ _____
   (e) Balance to close (not including **Buyer's** closing costs, prepaid items, and prorations)
       to be paid at closing by wire transfer or other Collected funds .......................... $ 218,000.00

   (f) ☐ (Complete only if purchase price will be determined based on a per unit cost instead of a fixed price.) The
   unit used to determine the purchase price is ☐ lot ☐ acre ☐ square foot ☐ other (specify): _____
   prorating areas of less than a full unit. The purchase price will be $ _____ per unit based on a
   calculation of total area of the Property as certified to **Seller** and **Buyer** by a Florida licensed surveyor in
   accordance with Paragraph 7(c). The following rights of way and other areas will be excluded from the
   calculation: _____

3. **Time for Acceptance; Effective Date:** Unless this offer is signed by **Seller** and **Buyer** and an executed copy
   delivered to all parties on or before _____, this offer will be withdrawn and **Buyer's** deposit, if
   any, will be returned. The time for acceptance of any counter offer will be 3 days after the date the counter offer is
   delivered. **The "Effective Date" of this contract is the date on which the last one of the Seller and Buyer
   has signed or initialed and delivered this offer or the final counter offer.**

4. **Closing Date:** This transaction will close on 15 DAYS AFT COURT AP ("Closing Date"), unless specifically
   extended by other provisions of this contract. The Closing Date will prevail over all other time periods including,
   but not limited to, Financing and Feasibility Study periods. However, if the Closing Date occurs on a Saturday,
   Sunday, or national legal holiday, it will extend to 5:00 p.m. (where the Property is located) of the next business
   day. In the event insurance underwriting is suspended on Closing Date and **Buyer** is unable to obtain property
   insurance, **Buyer** may postpone closing for up to 5 days after the insurance underwriting suspension is lifted. If
   this transaction does not close for any reason, **Buyer** will immediately return all **Seller** provided documents and
   other items.

Buyer FMOLB Sand Seller (_JW_) (___) acknowledge receipt of a copy of this page, which is 1 of 7 pages.
VAC-10   Rev 8/14
© Florida Association of Realtors®

Serial#: 025407-500142-1866646

Electronically Signed using eSignOnline™[ Session ID : 958b51c4-776c-4dd3-b3b8-f9b0395b51c1 ]

51  5. **Financing:** (Check as applicable)
52*     (a) ☒ **Buyer** will pay cash for the Property with no financing contingency.
53*     (b) ☐ This contract is contingent on **Buyer** qualifying for and obtaining the commitment(s) or approval(s)
54*         specified below ("Financing") within _____ days after Effective Date (Closing Date or 30 days after Effective
55*         Date, whichever occurs first, if left blank) ("Financing Period"). **Buyer** will apply for Financing within _____
56          days after Effective Date (5 days if left blank) and will timely provide any and all credit, employment, financial,
57          and other information required by the lender. If **Buyer**, after using diligence and good faith, cannot obtain the
58          Financing within the Financing Period, either party may terminate this contract and **Buyer's** deposit(s) will be
59          returned.
60*         (1) ☐ **New Financing:** Buyer will secure a commitment for new third party financing for $_____
61*             or _____ % of the purchase price at (**Check one**) ☐ a fixed rate not exceeding _____ % ☐ an
62*             adjustable interest rate not exceeding _____ % at origination (a fixed rate at the prevailing interest rate
63              based on **Buyer's** creditworthiness if neither choice is selected). **Buyer** will keep **Seller** and Broker fully
64              informed of the loan application status and progress and authorizes the lender or mortgage broker to
65              disclose all such information to **Seller** and Broker.
66*         (2) ☐ **Seller Financing:** Buyer will execute a ☐ first ☐ second purchase money note and mortgage to
67*             **Seller** in the amount of $_____, bearing annual interest at _____ % and payable as
68*             follows: _____
69              The mortgage, note, and any security agreement will be in a form acceptable to **Seller** and will follow
70              forms generally accepted in the county where the Property is located; will provide for a late payment fee
71              and acceleration at the mortgagee's option if **Buyer** defaults; will give **Buyer** the right to prepay without
72              penalty all or part of the principal at any time(s) with interest only to date of payment; will be due on
73              conveyance or sale; will provide for release of contiguous parcels, if applicable; and will require **Buyer** to
74              keep liability insurance on the Property, with **Seller** as additional named insured. **Buyer** authorizes **Seller**
75              to obtain credit, employment, and other necessary information to determine creditworthiness for the
76              financing. **Seller** will, within 10 days after Effective Date, give **Buyer** written notice of whether or not
77              **Seller** will make the loan.
78*         (3) ☐ **Mortgage Assumption:** Buyer will take title subject to and assume and pay existing first mortgage to
79*             _____
80*             LN#_____ in the approximate amount of $_____ currently payable at
81*             $_____ per month, including principal, interest, ☐ taxes and insurance, and having a
82*             ☐ fixed ☐ other (describe) _____
83*             interest rate of _____ % which ☐ will ☐ will not escalate upon assumption. Any variance in the
84              mortgage will be adjusted in the balance due at closing with no adjustment to purchase price. **Buyer** will
85*             purchase **Seller's** escrow account dollar for dollar. If the interest rate upon transfer exceeds _____ % or
86*             the assumption/transfer fee exceeds $_____, either party may elect to pay the excess,
87              failing which this contract will terminate; and **Buyer's** deposit(s) will be returned. If the lender disapproves
88              **Buyer**, this contract will terminate; and **Buyer's** deposit(s) will be returned.

89*  6. **Assignability:** (Check one) **Buyer** ☐ may assign and thereby be released from any further liability under this
90*     contract, ☒ may assign but not be released from liability under this contract, or ☐ may not assign this contract.

91*  7. **Title:** Seller has the legal capacity to and will convey marketable title to the Property by ☒ statutory warranty
92*     deed ☐ special warranty deed ☐ other (specify) _____, free of liens, easements,
93      and encumbrances of record or known to **Seller**, but subject to property taxes for the year of closing; covenants,
94      restrictions, and public utility easements of record; existing zoning and governmental regulations; and (list any
95*     other matters to which title will be subject) _____
96      provided there exists at closing no violation of the foregoing.
97      (a) **Title Evidence:** The party who pays for the owner's title insurance policy will select the closing agent and
98          pay for the title search, including tax and lien search if performed, and all other fees charged by closing agent.
99          **Seller** will deliver to **Buyer**, at
100*        (**Check one**) ☐ **Seller's** ☒ **Buyer's** expense and
101*        (**Check one**) ☐ within _____ days after Effective Date ☐ at least _____ days before Closing Date,
102         (**Check one**)
103*        (1) ☒ a title insurance commitment by a Florida licensed title insurer setting forth those matters to be
104             discharged by **Seller** at or before closing and, upon **Buyer** recording the deed, an owner's policy in the
105             amount of the purchase price for fee simple title subject only to the exceptions stated above. If **Buyer** is
106             paying for the owner's title insurance policy and **Seller** has an owner's policy, **Seller** will deliver a copy to
107             **Buyer** within 15 days after Effective Date.

Buyer (_MCLR_S_) and Seller (____) (____) acknowledge receipt of a copy of this page, which is 2 of 7 pages.
VAC-10    Rev 8/14                                                                                          © Florida Association of Realtors®

Serial#: 025407-500142-1866648

Electronically Signed using eSignOnline™[ Session ID : 958b51c4-776c-4dd3-b3b8-f9b0395b51c1 ]

108   (2) ☒ an abstract of title, prepared or brought current by an existing abstract firm or certified as correct by an
109    existing firm. However, if such an abstract is not available to **Seller**, then a prior owner's title policy
110    acceptable to the proposed insurer as a base for reissuance of coverage may be used. The prior policy
111    will include copies of all policy exceptions and an update in a format acceptable to **Buyer** from the policy
112    effective date and certified to **Buyer** or **Buyer's** closing agent together with copies of all documents
113    recited in the prior policy and in the update. If such an abstract or prior policy is not available to **Seller**,
114    then (1) above will be the title evidence.
115  **(b) Title Examination:** After receipt of the title evidence, **Buyer** will, within _____ days (10 days if left blank)
116   but no later than Closing Date, deliver written notice to **Seller** of title defects. Title will be deemed acceptable
117   to **Buyer** if (i) **Buyer** fails to deliver proper notice of defects or (ii) **Buyer** delivers proper written notice and
118   **Seller** cures the defects within _____ days (30 days if left blank) ("Cure Period") after receipt of the notice. If
119   the defects are cured within the Cure Period, closing will occur within 10 days after receipt by **Buyer** of notice
120   of such cure. **Seller** may elect not to cure defects if **Seller** reasonably believes any defect cannot be cured
121   within the Cure Period. If the defects are not cured within the Cure Period, **Buyer** will have 10 days after
122   receipt of notice of **Seller's** inability to cure the defects to elect whether to terminate this contract or accept
123   title subject to existing defects and close the transaction without reduction in purchase price.
124  **(c) Survey:** **Buyer** may, at **Buyer's** expense, have the Property surveyed and must deliver written notice to
125   **Seller**, within 5 days after receiving survey but not later than 5 days before Closing Date, of any
126   encroachments on the Property, encroachments by the Property's improvements on other lands, or deed
127   restriction or zoning violations. Any such encroachment or violation will be treated in the same manner as a
128   title defect and **Seller's** and **Buyer's** obligations will be determined in accordance with Paragraph 7(b).
129  **(d) Ingress and Egress:** **Seller** warrants that the Property presently has ingress and egress.

130 **8. Property Condition:** **Seller** will deliver the Property to **Buyer** at closing in its present "as is" condition, with
131  conditions resulting from **Buyer's** Inspections and casualty damage, if any, excepted. **Seller** will not engage in or
132  permit any activity that would materially alter the Property's condition without the **Buyer's** prior written consent.
133  **(a) Inspections:** (Check (1) or (2))
134   (1) ☒ **Feasibility Study:** **Buyer** will, at **Buyer's** expense and within __45__ days (30 days if left blank)
135    ("Feasibility Study Period") after Effective Date and in **Buyer's** sole and absolute discretion, determine
136    whether the Property is suitable for **Buyer's** intended use. During the Feasibility Study Period, **Buyer**
137    may conduct a Phase 1 environmental assessment and any other tests, analyses, surveys, and
138    investigations ("Inspections") that **Buyer** deems necessary to determine to **Buyer's** satisfaction the
139    Property's engineering, architectural, and environmental properties; zoning and zoning restrictions;
140    subdivision statutes; soil and grade; availability of access to public roads, water, and other utilities;
141    consistency with local, state, and regional growth management plans; availability of permits, government
142    approvals, and licenses; and other inspections that **Buyer** deems appropriate. If the Property must be
143    rezoned, **Buyer** will obtain the rezoning from the appropriate government agencies. **Seller** will sign all
144    documents **Buyer** is required to file in connection with development or rezoning approvals. **Seller** gives
145    **Buyer**, its agents, contractors, and assigns, the right to enter the Property at any time during the
146    Feasibility Study Period for the purpose of conducting Inspections, provided, however, that **Buyer**, its
147    agents, contractors, and assigns enter the Property and conduct Inspections at their own risk. **Buyer** will
148    indemnify and hold **Seller** harmless from losses, damages, costs, claims, and expenses of any nature,
149    including attorneys' fees, expenses, and liability incurred in application for rezoning or related
150    proceedings, and from liability to any person, arising from the conduct of any and all Inspections or any
151    work authorized by **Buyer**. **Buyer** will not engage in any activity that could result in a construction lien
152    being filed against the Property without **Seller's** prior written consent. If this transaction does not close,
153    **Buyer** will, at **Buyer's** expense, (i) repair all damages to the Property resulting from the Inspections and
154    return the Property to the condition it was in before conducting the Inspections and (ii) release to **Seller**
155    all reports and other work generated as a result of the Inspections.

156    Before expiration of the Feasibility Study Period, **Buyer** must deliver written notice to **Seller** of **Buyer's**
157    determination of whether or not the Property is acceptable. **Buyer's** failure to comply with this notice
158    requirement will constitute acceptance of the Property as suitable for **Buyer's** intended use in its "as is"
159    condition. If the Property is unacceptable to **Buyer** and written notice of this fact is timely delivered to
160    **Seller**, this contract will be deemed terminated, and **Buyer's** deposit(s) will be returned.

161   (2) ☐ **No Feasibility Study:** **Buyer** is satisfied that the Property is suitable for **Buyer's** purposes, including
162    being satisfied that either public sewerage and water are available to the Property or the Property will be
163    approved for the installation of a well and/or private sewerage disposal system and that existing zoning

Buyer FMCL B.S and Seller (_____) (_____) acknowledge receipt of a copy of this page, which is 3 of 7 pages.
VAC-10   Rev 8/14                            © Florida Association of Realtors®

Serial#: 025407-500142-1865646

Electronically Signed using eSignOnline™| Session ID : 958b51c4-776c-4dd3-b3b8-f9b0395b51c1 1

164 and other pertinent regulations and restrictions, such as subdivision or deed restrictions, concurrency,
165 growth management, and environmental conditions, are acceptable to **Buyer**. This contract is not
166 contingent on **Buyer** conducting any further investigations.
167 (b) **Government Regulations:** Changes in government regulations and levels of service which affect **Buyer's**
168 intended use of the Property will not be grounds for terminating this contract if the Feasibility Study Period has
169 expired or if Paragraph 8(a)(2) is selected.
170 (c) **Flood Zone: Buyer** is advised to verify by survey, with the lender, and with appropriate government
171 agencies which flood zone the Property is in, whether flood insurance is required, and what restrictions apply
172 to improving the Property and rebuilding in the event of casualty.
173 (d) **Coastal Construction Control Line ("CCCL"):** If any part of the Property lies seaward of the CCCL as
174 defined in Section 161.053, Florida Statutes, **Seller** will provide **Buyer** with an affidavit or survey as required
175 by law delineating the line's location on the Property, unless **Buyer** waives this requirement in writing. The
176 Property being purchased may be subject to coastal erosion and to federal, state, or local regulations that
177 govern coastal property, including delineation of the CCCL, rigid coastal protection structures, beach
178 nourishment, and the protection of marine turtles. Additional information can be obtained from the Florida
179 Department of Environmental Protection, including whether there are significant erosion conditions associated
180 with the shore line of the Property being purchased.
181* ☐ **Buyer** waives the right to receive a CCCL affidavit or survey.

182 9. **Closing Procedure; Costs:** Closing will take place in the county where the Property is located and may be
183 conducted by mail or electronic means. If title insurance insures **Buyer** for title defects arising between the title
184 binder effective date and recording of **Buyer's** deed, closing agent will disburse at closing the net sale proceeds
185 to **Seller** (in local cashier's check if **Seller** requests in writing at least 5 days before closing) and brokerage fees to
186 Broker as per Paragraph 19. In addition to other expenses provided in this contract, **Seller** and **Buyer** will pay the
187 costs indicated below.
188 (a) **Seller Costs:**
189 Taxes on deed
190 Recording fees for documents needed to cure title
191 Title evidence (if applicable under Paragraph 7)
192* Other: _____ survey _____
193 (b) **Buyer Costs:**
194 Taxes and recording fees on notes and mortgages
195 Recording fees on the deed and financing statements
196 Loan expenses
197 Title evidence (if applicable under Paragraph 7)
198 Lender's title policy at the simultaneous issue rate
199 Inspections
200 Survey
201 Insurance
202* Other: _____
203 (c) **Prorations:** The following items will be made current and prorated as of the day before Closing Date: real
204 estate taxes (including special benefit tax liens imposed by a CDD), interest, bonds, assessments, leases,
205 and other Property expenses and revenues. If taxes and assessments for the current year cannot be
206 determined, the previous year's rates will be used with adjustment for any exemptions.
207 (d) **Special Assessment by Public Body:** Regarding special assessments imposed by a public body, **Seller**
208 will pay (i) the full amount of liens that are certified, confirmed, and ratified before closing and (ii) the amount
209 of the last estimate of the assessment if an improvement is substantially completed as of Effective Date but
210 has not resulted in a lien before closing; and **Buyer** will pay all other amounts. If special assessments may be
211* paid in installments, ☒ **Seller** ☐ **Buyer** (**Buyer** if left blank) will pay installments due after closing. If **Seller** is
212 checked, **Seller** will pay the assessment in full before or at the time of closing. Public body does not include a
213 Homeowners' or Condominium Association.
214 (e) **PROPERTY TAX DISCLOSURE SUMMARY:** BUYER SHOULD NOT RELY ON THE **SELLER'S** CURRENT
215 PROPERTY TAXES AS THE AMOUNT OF PROPERTY TAXES THAT **BUYER** MAY BE OBLIGATED TO
216 PAY IN THE YEAR SUBSEQUENT TO PURCHASE. A CHANGE OF OWNERSHIP OR PROPERTY
217 IMPROVEMENTS TRIGGERS REASSESSMENTS OF THE PROPERTY THAT COULD RESULT IN
218 HIGHER PROPERTY TAXES. IF YOU HAVE ANY QUESTIONS CONCERNING VALUATION, CONTACT
219 THE COUNTY PROPERTY APPRAISER'S OFFICE FOR FURTHER INFORMATION.

Buyer (FMG) (BSL) and Seller (____) (____) acknowledge receipt of a copy of this page, which is 4 of 7 pages.
VAC-10 Rev 8/14 © Florida Association of Realtors®

Serial#: 025487-500142-1866646

Electronically Signed using eSignOnline™ Session ID : 958b51c4-776c-4dd3-b3b8-f9b0395b51c1_1

    (f) **Foreign Investment in Real Property Tax Act ("FIRPTA"):** If **Seller** is a "foreign person" as defined by FIRPTA, **Seller** and **Buyer** will comply with FIRPTA, which may require **Seller** to provide additional cash at closing.

    (g) **1031 Exchange:** If either **Seller** or **Buyer** wish to enter into a like-kind exchange (either simultaneously with closing or after) under Section 1031 of the Internal Revenue Code ("Exchange"), the other party will cooperate in all reasonable respects to effectuate the Exchange including executing documents, provided, however, that the cooperating party will incur no liability or cost related to the Exchange and that the closing will not be contingent upon, extended, or delayed by the Exchange.

**10. Computation of Time:** Calendar days will be used when computing time periods, except time periods of 5 days or less. Time periods of 5 days or less will be computed without including Saturday, Sunday, or national legal holidays specified in 5 U.S.C. 6103(a). Any time period ending on a Saturday, Sunday, or national legal holiday will extend until 5:00 p.m. (where the Property is located) of the next business day. **Time is of the essence in this contract.**

**11. Risk of Loss; Eminent Domain:** If any portion of the Property is materially damaged by casualty before closing or **Seller** negotiates with a governmental authority to transfer all or part of the Property in lieu of eminent domain proceedings or an eminent domain proceeding is initiated, **Seller** will promptly inform **Buyer**. Either party may terminate this contract by written notice to the other within 10 days after **Buyer's** receipt of **Seller's** notification, and **Buyer's** deposit(s) will be returned, failing which **Buyer** will close in accordance with this contract and receive all payments made by the governmental authority or insurance company, if any.

**12. Force Majeure:** **Seller** or **Buyer** will not be required to perform any obligation under this contract or be liable to each other for damages so long as the performance or non-performance of the obligation is delayed, caused, or prevented by an act of God or force majeure. An "act of God or "force majeure" is defined as hurricanes, earthquakes, floods, fire, unusual transportation delays, wars, insurrections, and any other cause not reasonably within the control of **Seller** or **Buyer** and which by the exercise of due diligence the non-performing party is unable in whole or in part to prevent or overcome. All time periods, including Closing Date, will be extended for the period that the act of God or force majeure is in place. However, in the event that such act of God or force majeure event continues beyond 30 days, either party may terminate this contract by delivering written notice to the other; and **Buyer's** deposit(s) will be returned.

**13. Notices:** All notices will be in writing and delivered to the parties and Broker by mail, personal delivery, or electronic means. **Buyer's failure to timely deliver written notice to Seller, when such notice is required by this contract, regarding any contingency will render that contingency null and void, and this contract will be construed as if the contingency did not exist. Any notice, document, or item delivered to or received by an attorney or licensee (including a transactions broker) representing a party will be as effective as if delivered to or received by that party.**

**14. Complete Agreement; Persons Bound:** This contract is the entire agreement between **Seller** and **Buyer**. **Except for brokerage agreements, no prior or present agreements will bind Seller, Buyer, or Broker unless incorporated into this contract.** Modifications of this contract will not be binding unless in writing, signed or initialed, and delivered by the party to be bound. Electronic signatures will be acceptable and binding. This contract, signatures, initials, documents referenced in this contract, counterparts, and written modifications communicated electronically or on paper will be acceptable for all purposes, including delivery, and will be binding. Handwritten or typewritten terms inserted in or attached to this contract prevail over preprinted terms. If any provision of this contract is or becomes invalid or unenforceable, all remaining provisions will continue to be fully effective. **Seller** and **Buyer** will use diligence and good faith in performing all obligations under this contract. This contract will not be recorded in any public record. The terms **"Seller," "Buyer,"** and **"Broker"** may be singular or plural. This contract is binding on the heirs, administrators, executors, personal representatives, and assigns, if permitted, of **Seller, Buyer,** and Broker.

**15. Default and Dispute Resolution:** This contract will be construed under Florida law. This Paragraph will survive closing or termination of this contract.

    (a) **Seller Default:** If **Seller** fails, neglects, or refuses to perform **Seller's** obligations under this contract, **Buyer** may elect to receive a return of **Buyer's** deposit(s) without thereby waiving any action for damages resulting from **Seller's** breach and may seek to recover such damages or seek specific performance. **Seller** will also be liable for the full amount of the brokerage fee.

Buyer (FMCJ B) and Seller (MW) acknowledge receipt of a copy of this page, which is 5 of 7 pages.
VAC-10    Rev 8/14      © Florida Association of Realtors®

272  (b) **Buyer Default:** If **Buyer** fails, neglects, or refuses to perform **Buyer's** obligations under this contract,
273  including payment of deposit(s), within the time(s) specified, **Seller** may elect to recover and retain the
274  deposit(s), paid and agreed to be paid, for the account of **Seller** as agreed upon liquidated damages,
275  consideration for execution of this contract, and in full settlement of any claims, whereupon **Seller** and **Buyer**
276  will be relieved from all further obligations under this contract; or **Seller**, at **Seller's** option, may proceed in
277  equity to enforce **Seller's** rights under this contract.

278  **16. Escrow Agent; Closing Agent: Seller** and **Buyer** authorize Escrow Agent and closing agent (collectively
279  "Agent") to receive, deposit, and hold funds and other items in escrow and, subject to Collection, disburse them
280  upon proper authorization and in accordance with Florida law and the terms of this contract, including disbursing
281  brokerage fees. "Collection" or "Collected" means any checks tendered or received have become actually and
282  finally collected and deposited in the account of Agent. The parties agree that Agent will not be liable to any
283  person for misdelivery of escrowed items to **Seller** or **Buyer**, unless the misdelivery is due to Agent's willful
284  breach of this contract or gross negligence. If Agent interpleads the subject matter of the escrow, Agent will pay
285  the filing fees and costs from the deposit and will recover reasonable attorneys' fees and costs to be paid from the
286  escrowed funds or equivalent and charged and awarded as court costs in favor of the prevailing party.

287  **17. Professional Advice; Broker Liability:** Broker advises **Seller** and **Buyer** to verify all facts and representations
288  that are important to them and to consult an appropriate professional for legal advice (for example, interpreting
289  this contract, determining the effect of laws on the Property and this transaction, status of title, foreign investor
290  reporting requirements, the effect of property lying partially or totally seaward of the CCCL, etc.) and for tax,
291  property condition, environmental, and other specialized advice. **Buyer** acknowledges that Broker does not reside
292  in the Property and that all representations (oral, written, or otherwise) by Broker are based on **Seller**
293  representations or public records. **Buyer agrees to rely solely on Seller, professional inspectors, and**
294  **government agencies for verification of the Property condition and facts that materially affect Property**
295  **value. Seller** and **Buyer** respectively will pay all costs and expenses, including reasonable attorneys' fees at all
296  levels, incurred by Broker and Broker's officers, directors, agents, and employees in connection with or arising
297  from **Seller's** or **Buyer's** misstatement or failure to perform contractual obligations. **Seller** and **Buyer** hold
298  harmless and release Broker and Broker's officers, directors, agents, and employees from all liability for loss or
299  damage based on (i) **Seller's** or **Buyer's** misstatement or failure to perform contractual obligations; (ii) the use or
300  display of listing data by third parties, including, but not limited to, photographs, images, graphics, video
301  recordings, virtual tours, drawings, written descriptions, and remarks related to the Property; (iii) Broker's
302  performance, at **Seller's** or **Buyer's** request, of any task beyond the scope of services regulated by Chapter 475,
303  Florida Statutes, as amended, including Broker's referral, recommendation, or retention of any vendor; (iv)
304  products or services provided by any vendor; and (v) expenses incurred by any vendor. **Seller** and **Buyer** each
305  assume full responsibility for selecting and compensating their respective vendors. This Paragraph will not relieve
306  Broker of statutory obligations. For purposes of this Paragraph, Broker will be treated as a party to this contract.
307  This Paragraph will survive closing.

308  **18. Commercial Real Estate Sales Commission Lien Act:** If the Property is commercial real estate as defined by
309  Section 475.701, Florida Statutes, the following disclosure will apply: The Florida Commercial Real Estate Sales
310  Commission Lien Act provides that when a broker has earned a commission by performing licensed services
311  under a brokerage agreement with you, the broker may claim a lien against your net sales proceeds for the
312  broker's commission. The broker's lien rights under the act cannot be waived before the commission is earned.

313  **19. Brokers:** The brokers named below are collectively referred to as "Broker." **Instruction to closing agent:**
314  **Seller** and **Buyer** direct closing agent to disburse at closing the full amount of the brokerage fees as specified in
315  separate brokerage agreements with the parties and cooperative agreements between the Brokers, except to the
316  extent Broker has retained such fees from the escrowed funds. This Paragraph will not be used to modify any
317  MLS or other offer of compensation made by **Seller** or **Seller's** Broker to **Buyer's** Broker.
318  (a) _____Counts Real Estate Group Inc_____ (**Seller's** Broker)
319  will be compensated by ☒ **Seller** ☐ **Buyer** ☐ both parties pursuant to ☐ a listing agreement ☐ other
320  (specify): _____
321  (b) _____Crye-Leike Coastal Realty_____ (**Buyer's** Broker)
322  will be compensated by ☐ **Seller** ☐ **Buyer** ☐ both parties ☐ **Seller's** Broker pursuant to ☐ a MLS offer of
323  compensation ☒ other (specify): _____Commission split 50/50 WITH listing company_____

Buyer (_____)(_____) and Seller (_____)(_____) acknowledge receipt of a copy of this page, which is 6 of 7 pages.
VAC-10   Rev 8/14                                                                                                © Florida Association of Realtors®

324* **20. Additional Terms:** DUE DILIGENCE PERIOD WILL BE 45 DAYS FROM EFFECTIVE DATE OF THE CONTRACT.
325
326 STORM WATER DRAINS TO BE PLACED AT THE 2 CORNERS OF THE LOT RATHER THAN ONE LARGE DRAIN
327 TO MAXIMIZE PARKING.
328
329
330
331
332
333
334
335
336
337
338
339
340

341 This is intended to be a legally binding contract. If not fully understood, seek the advice of an attorney before
342 signing.

343* **Buyer:** FICHTER MANAGEMENT CO, LLC. BY SANDRA. L. FICHTER                Date:
344* Print name: FICHTER MANAGEMENT CO, LLC. BY SANDRA. L. FICHTER
345* **Buyer:** _____ Date: _____
346* Print name: _____
347 **Buyer's** address for purpose of notice:
348* Address: _____
349* Phone: 304-741-7508     Fax: _____     Email: Jagzz@suddenlink.net

350* **Seller:** _____ Date: _____
351* Print name: JOHN VENN, TRUSTEE
352* **Seller:** _____ Date: _____
353* Print name: _____
354 **Seller's** address for purpose of notice:
355* Address: _____
356* Phone: _____     Fax: _____     Email: _____

357* **Effective Date:** _____ **(The date on which the last party signed or initialed and delivered the**
358 **final offer or counter offer.)**

Florida Association of REALTORS® and local Board/Association of REALTORS® make no representation as to the legal validity or adequacy of any provision of this form in any specific transaction. This standardized form should not be used in complex transactions or with extensive riders or additions. This form is available for use by the entire real estate industry and is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark that may be used only by real estate licensees who are members of the National Association of REALTORS® and who subscribe to its Code of Ethics. The copyright laws of the United States (17 U.S. Code) forbid the unauthorized reproduction of blank forms by any means including facsimile or computerized forms.

Buyer (FMCL BSLF) and Seller (JW) (____) acknowledge receipt of a copy of this page, which is 7 of 7 pages.
VAC-10    Rev 8/14                                                                 © Florida Association of Realtors®

Serial#: 025407-500142-1866646

Electronically Signed using eSignOnline™[ Session ID : 958b51c4-776c-4dd3-b3b8-f9b0395b51c1 ]

## ADDENDUM TO CONTRACT

1. The Trustee will convey title by Trustee's deed in lieu of a Warranty Deed to convey the property being sold, and any title affidavits to be executed will be based solely on the Trustee's personal knowledge of the facts therein with no warranties, express or implied.

2. The property is sold as is.

3. The Trustee has not seen the property and makes no representations or warranties as to the property or its fitness for Buyer's intended use.

4. This sale is subject to Bankruptcy Court approval. Trustee is required to consider any higher bids that may be submitted. If a higher bid is submitted to the Trustee, the buyer will be notified and given an opportunity to bid higher. If a higher bid is received the Trustee will still pay a commission to the Realtor, subject to Court approval, however, the commission will be limited to the amount of the initial contract executed by the Trustee.

5. In the event there are pro-rations at closing based upon estimates, such estimates will be deemed final and no adjustments will be made after closing.

6. Trustee has disclosed any mortgages and liens of which he has knowledge, however, Trustee has not done any title search on the property prior to listing.

7. If the sale does not close, Buyer shall be responsible for all costs incurred by Buyer.

8. Any Owner's Gap Affidavit shall not attest to the Trustee knowledge of any fact which predates his appointment as Trustee.

_SF_
BUYERS
INITIALS

SELLERS
INITIALS



# Counts Real Estate Group, Inc.
## CLOSING COST ESTIMATE

www.CountsRealEstate.com

19-Aug-14   11:24 AM

SALE PRICE------->
ADDRESS----->                           Hiighway 77
TYPE TRANSACTION- CASH

|  |  |  | BUYER | SELLER |
|---|---|---|---|---|
| Print Buyer? Y/N----> | Y |  |  |  |
| Print Seller? Y/N----> | Y |  |  |  |
| ST.DOC.STMPS ON DEED-> | S |  | $0 | $1,540 |
| TITLE INSURANCE------> | S |  | $0 | $1,595 |
| RECORDING FEES------> | B |  | $25 | $0 |
| SURVEY-----------> |  |  | $0 | $0 |
| TERMITE INSPECTION---> |  |  | $0 | $0 |
| APPRAISAL----------> |  |  | $0 | $0 |
| BROKERAGE-> | 7.0 | S | $0 | $15,400 |
| WATER SAMPLE--------> |  |  | $0 | $0 |
| SEPTIC SYS INSP------> |  |  | $0 | $0 |
| EXPRESS MAIL FEES----> |  |  | $0 | $0 |
| HOME WARRANTY PLAN---> |  |  | $0 | $0 |
| MISC.------> |  |  | $0 | $0 |
| ADMINISTRATION FEE |  |  | $195 | $0 |
| OTHER-------> |  |  | $0 | $0 |
| TOTAL ESTIMATED CLOSING COST------> |  |  | $220 | $18,535 |

Discount points are variable and the rate in effect at the time of closing will apply. The rate quoted is an estimate at this time.

| BUYER'S CASH REQUIREMENTS |  |  | SELLER'S SETTLEMENT |  |
|---|---|---|---|---|
| Selling Price |  | $220,000 | Sale Price | $220,000 |
| Plus Closing Costs |  | $220 | Less Est. Clos. Cost | $18,535 |
| Less Earnest Deposit |  | $0 | Estimated Gross | $201,465 |
|  |  |  | Less 1st Mortgage | $0 |
| EST.CASH ON CLOSING--> |  | $220,220 | Less 2nd Mortgage | $0 |
| Tax-Hmst? | Y | $228.72 | EST. NET TO SELLER | $201,465 |
| Millage | 15.8652 |  |  |  |
| One Year Hazard Ins. |  | $0 | Less Tax Proration | YES |
| One Year Flood Ins. |  | $0 | Plus escrow account | YES |

It is understood that the above closing costs are ESTIMATES and subject to change at closing. Parties agree to pay actual costs of above stated items.

Realtor/Associate_____

Buyer/Seller _____ /s/ Jack J. Trussler _____

Buyer/Seller_____

REV. 4.2010